IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

CATHERINE GULLEDGE, as
Guardian Ad Litem for A.C., a
minor, et al.,

      Plaintiffs,

  v.                              Civil Action No  1:24CV916

CABARRUS COUNTY BOARD OF
EDUCATION, et al.,

      Defendants.


## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Cabarrus County Board of Education's ("the Board") motion to dismiss brought under rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  See ECF No. 11.  For the reasons explained below, the motion is **GRANTED** in part and **DENIED** in part.

### I.   Background

This case arises from student-on-student sexual abuse that allegedly occurred at a public elementary school in Cabarrus County, North Carolina.  See ECF No. 9 at 2.  Plaintiffs include Catherine and David Gulledge and their minor child, A.C., whom Catherine Gulledge represents as guardian ad litem.  See id. at 1.

Plaintiffs allege that in October 2021, A.C. was ten years old and "endured a series of sexual assaults, fondling, and sexual harassment by a fellow student . . . ."  Id. at 4. Plaintiffs allege that A.C. promptly reported the first incident to defendant Jill Staton,[1] a teacher at the elementary school. See id.  As to what happened next, plaintiffs plead in the alternative that Staton may or may not have notified the Board of the alleged incident.  See id.  In any event, according to plaintiffs, the student continued to sexually assault A.C., and "[o]n multiple occasions spanning several weeks after the initial incident, the [other student] grabbed, fondled, and squeezed A.C.'s privates and repeatedly verbally harassed him by making lewd gestures."  Id.

It was not until approximately a month later and after "A.C. broke down and was inconsolable due to the ongoing harassment" that school officials notified A.C.'s parents of the alleged harassment.  Id.  Plaintiffs allege that around that time, school officials developed a "safety plan" to protect A.C. from the other student.  See id.  According to plaintiffs, A.C.

---

[1] Plaintiffs called this defendant Tanya Staton in the operative complaint.  See ECF No. 9.  Plaintiffs have since filed a motion to amend the complaint (ECF No. 32) to correct her name to her legal name of Jill Staton.  That motion is **GRANTED**.  Because this does not change the substance of the pleadings, this amendment does not supersede the operative complaint and motions addressed thereto.

and the other student continued to have contact after the school implemented the safety plan. See id. Plaintiffs allege that before these incidents, A.C. was a normal child, but that afterward he was "withdrawn, easily triggered, and attempted to harm himself." Id.

Based on these allegations, plaintiffs bring various tort claims under North Carolina law as well as alleged violations of 42 U.S.C. § 1983; Title IX of the Education Act of 1972, 20 U.S.C. § 1681 et seq.; and the North Carolina Constitution. See id. at 5-12. Plaintiffs also sued Staton and defendant William Davis, "[a] public employee of [the Board] . . . [,]" in their official and individual capacities. See id. at 1-2. However, plaintiffs had not served those defendants when the Board filed this motion to dismiss, and the court granted plaintiffs an extension of time to serve them. See ECF No. 20. Therefore, the court will address only the claims against the Board.

In its motion to dismiss, the Board asserts two primary arguments: (1) plaintiffs' tort claims are barred by the Board's sovereign immunity and should be dismissed under Rules 12(b)(1) and 12(b)(2), or in the alternative, plaintiffs' tort claims should be dismissed under Rule 12(b)(6) for failure to state valid claims, see ECF No. 14 at 5-12; and (2) plaintiffs' § 1983, Title IX, and North Carolina constitutional claims

3

should be dismissed under Rule 12(b)(6) for failure to state valid claims, <u>see id</u>. at 12-23.

## II. Legal Standard

When faced with questions of sovereign immunity under North Carolina law, some courts address it as a subject matter jurisdiction issue under Rule 12(b)(1), while others treat it as a personal jurisdiction issue under Rule 12(b)(2). <u>See</u> <u>Stevens v. Cabarrus Cty. Bd. of Educ.</u>, 514 F. Supp. 3d 797, 818 (M.D.N.C. 2021). Either way, "whether consideration is made pursuant to Rule 12(b)(1) or (b)(2) appears to have no impact on the method of review." <u>Id</u>. at 818 n.12 (citing <u>Pettiford v. City of Greensboro</u>, 556 F. Supp. 2d 512, 524 n.8 (M.D.N.C. 2008)). The court is to "draw all reasonable inferences and resolve all factual disputes in the plaintiff[s'] favor." <u>Id</u>. at 818 (citing <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60 (4th Cir. 1993)).

When deciding a motion to dismiss under Rule 12(b)(6), "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. <u>A Soc'y Without a Name v. Virginia</u>, 655 F.3d 342, 346 (4th Cir. 2011).

4

## III. Discussion

### A. Tort Claims

The Board moves under Rules 12(b)(1) and 12(b)(2) to dismiss plaintiffs' tort claims for lack of subject matter and personal jurisdiction based on the Board's sovereign immunity. See ECF No. 14 at 4-7.

Under North Carolina law, "[a] county or city board of education is a governmental agency and its employees are not ordinarily liable in a tort action unless the board has waived its sovereign immunity." Herring v. Liner, 594 S.E.2d 117, 119 (N.C. Ct. App. 2004). A board of education waives its immunity only if it secures liability insurance that indemnifies the board or its employees. See id. (quoting N.C. Gen. Stat. § 115C-42).

In this case, the Board submits evidence that it did not purchase liability insurance that waived its immunity. See ECF Nos. 12, 13. Plaintiffs concede after reviewing this evidence that the Board did not waive its sovereign immunity. See ECF No. 19 at 3.

Accordingly, the Board's motion to dismiss is **GRANTED** as to plaintiffs' tort claims.

5

**B.  § 1983, Title IX, and State Constitutional Claims**

    **1.  § 1983**

Plaintiffs bring § 1983 claims against the Board based on (1) the Board's alleged "deliberate indifference" to the threat of harm to A.C. because the Board "facilitated and ignored specific actions of harm[,]" and (2) "persistent and widespread" practices of the Board that "became its official policy and/or custom[.]" ECF No. 9 at 8.  These allegations track the language for § 1983 claims brought pursuant to Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978).

"Monell permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'"  Starbuck v. Williamsburg James City Cty. Sch. Bd., 28 F.4th 529, 532-33 (4th Cir. 2022) (quoting Monell, 436 U.S. at 690-91).  "[S]chool boards and municipalities are indistinguishable for purposes of § 1983."  Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522 n.3 (4th Cir. 2000) (citing Monell, 436 U.S. at 696).  As with other Monell claims, a litigant can establish the existence of a custom or policy of a school board in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly

6

> train officers, that "manifest[s] deliberate
> indifference to the rights of citizens"; or
> (4) through a practice that is so
> "persistent and widespread" as to constitute
> a "custom or usage with the force of law."

Starbuck, 28 F.4th. at 532-33 (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)).

In this case, plaintiffs allege two of these theories: (1) deliberate indifference and (2) practices that became the Board's policy or custom.

### (a). Deliberate indifference

The operative complaint does not say that the deliberate indifference allegations are brought pursuant to a supervisory liability theory. See ECF No. 9 at 7. However, the Board defends the allegations as such, see ECF No. 14 at 12-13, and plaintiffs acquiesce to that framing of the deliberate indifference allegations, see ECF No. 19 at 5.

The court notes that "it is not clear whether the law recognizes school board liability under § 1983 for a failure to supervise." Mathis v. Caswell Cty. Sch. Bd. of Educ., No. 1:20cv92, 2021 WL 1109466, at *12 (M.D.N.C. Mar. 23, 2021); see also Evans v. Griffin, No. 1:14CV1091, 2018 WL 1578153, at *7 (M.D.N.C. Mar. 28, 2018) ("It is unclear whether the law recognizes municipal liability under § 1983 for a failure to supervise."). Nonetheless, for purposes of this motion, the

Case 1:24-cv-00916-DAF-JEP    Document 33    Filed 05/07/25    Page 7 of 23

court will address the deliberate indifference allegations under the supervisory liability framework put forth by the Board.

The United States Court of Appeals for the Fourth Circuit "[r]ecognizing that supervisory liability can extend 'to the highest levels of state government,' [has] noted that liability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984)). Therefore, that court established three factors to impose supervisory liability for deliberate indifference:

> "[A] pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799.

The first element requires a plaintiff to show that a supervisor had knowledge of a subordinate's conduct and that the conduct posed pervasive and unreasonable risk of constitutional injury to the plaintiff. See id. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several

8

different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id. (quoting Slakan, 737 F.2d at 373-74).

The second element, deliberate indifference, may be demonstrated by showing a supervisor's "continued inaction in the face of documented widespread abuses." Id. (quoting Slakan, 737 F.2d at 373). A plaintiff assumes a heavy burden of proof for this element. See id.

The final element, causation, requires an "affirmative causal link" between a supervisor's inaction and a plaintiff's injuries. See id. (quoting Slakan, 737 F.2d at 376). This element includes actual and proximate causation. See id.

In this case, plaintiffs allege that the Board showed deliberate indifference to the risk of harm to A.C. because, under one theory of plaintiffs' case, Staton reported the first incident of sexual abuse against A.C. to the Board. See ECF No. 9 at 4. Even so, plaintiffs allege, the Board took no action, allowing the abuse to continue for several weeks. See id. The school then implemented a safety plan, but A.C. continued to have contact with the offending student. See id.

The Board argues that this claim fails because, according to plaintiffs' allegations, the Board had no knowledge of the alleged abuse, responded appropriately by implementing a safety

9

plan, and the abuse ceased when the school implemented the safety plan:

> [Plaintiffs] fail to show that the Board had actual or constructive knowledge of the risk of sexual misconduct by the alleged [a]ssailant prior to November 2021, that the Board responded inadequately (by establishing and implementing a safety plan (in November 2021), or that abusive misconduct by the [a]ssailant continued after the safety plan was implemented.

ECF No. 14 at 13. However, the Board's argument depends on the assumption that it had no knowledge of the initial assault against A.C in October 2021, of which A.C. allegedly informed Staton. To draw that inference against plaintiffs at this stage would be inappropriate.

Instead, the court accepts as true plaintiffs' allegation that A.C. informed Staton of the abuse in October and that Staton conveyed the information to the Board. While plaintiffs plead this fact in the alternative, "Rule 8(d)(2) allows a plaintiff to plead alternate theories of a claim . . . ." Lathon v. Wal-Mart Stores East, LP, No. 3:09cv57, 2009 WL 1172864, at *2 (E.D. Va. Apr. 29, 2009). Plaintiffs may use the discovery process to discern which, if any, theory of plaintiffs' claims apply to this case. See id.

The Board argues that the court should ignore this allegation because it is conclusory. However, this is a factual allegation, not a legal conclusion, and "[i]n reviewing a Rule

10

12(b)(6) motion, a court 'must accept as true all of the factual allegations contained in the complaint' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co., 388 F. Supp. 3d 574, 584 (D. Md. 2019) (quoting Soc'y Without a Name, 655 F.3d at 346).

Thus, plaintiffs adequately allege that the Board had actual knowledge of the initial abuse against A.C. Viewing the allegations in the light most favorable to plaintiffs, the Board showed deliberate indifference by not implementing a safety plan until November after A.C. suffered more abuse and had a breakdown. The court can also infer that A.C.'s injuries continued when he continued to have contact with the offending student after the safety plan was implemented.

### (b). Policy or Custom through Practices

Plaintiffs allege that the Board is liable under § 1983 because the Board caused A.C.'s injuries by developing practices so persistent and widespread as to constitute a custom or usage with the force of law. According to plaintiffs' allegations, these practices include:

> a. Leaving minor students unattended and unsupervised;
>
> b. Allowing children to be harassed, abused, and/or assaulted in and around the classroom;

11

c.    Disregarding their own written
                policies, regarding harassment,
                assault, and supervision; and

          d.    In other ways to be proven through
                discovery of this matter.

ECF No. 9 at 8.

     The Board argues that "[p]laintiffs' 'custom or policy'
theory is not recognized as a separate type of § 1983 claim."
ECF No. 21 at 3.  However, this argument fails because the
existence of custom or policy is the essential element of a §
1983 claim against a municipality under <u>Monell</u>, 436 U.S. at 658,
and <u>Monell</u> claims against school boards are widely recognized,
<u>see, e.g.</u>, <u>Starbuck</u>, 28 F.4th at 532-33.

     Accepting plaintiffs' allegations as true, they
sufficiently allege that the Board established a custom or
policy through its practices, giving rise to liability under
<u>Monell</u>.

     The Board's motion to dismiss is **DENIED** as to plaintiffs' §
1983 claims.[2]

_____

[2]  Plaintiffs also bring § 1983 claims against Staton and Davis,
in both their individual and official capacities.  <u>See</u> ECF No. 9
at 1-2.  However, the Board cannot be held liable under § 1983
solely for the actions of Staton and Davis.  Plaintiffs must
prove the Board's culpability by showing that Staton and Davis
acted pursuant to a policy or custom of the Board.  Therefore,
to the extent plaintiffs attempt to hold the Board liable based
on vicarious liability, those claims are **DISMISSED**.

## 2. Title IX

Plaintiffs bring claims against the Board under Title IX, alleging that the Board acted with deliberate indifference to known sexual harassment, thereby depriving A.C. of the educational benefits of a federally funded school. See ECF No. 9 at 10.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX claims based on student-on-student sexual harassment are actionable against school boards, if a plaintiff can prove four elements:

> (1) she was a student at an educational institution receiving federal funds; (2) she suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by her school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment.

13

<u>Doe v. Fairfax Cty. Sch. Bd.</u>, 1 F.4th 257, 263-64 (4th Cir. 2021) (citing <u>Davis v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 646-47 (1999)).

The Board raises two primary arguments in its motion to dismiss these claims. First, it argues, as it did for the § 1983 claims, that "the allegations do not establish that the Board had actual knowledge of student-on-student harassment before the alleged incidents . . . ." ECF No. 14 at 17. Second, the Board argues "the allegations certainly belie the conclusion that the Board was deliberately indifferent[,]" because the Board contends, its response to the alleged report of harassment was reasonable. <u>See id</u>. These arguments fail.

With respect to the first argument, plaintiffs allege actual knowledge. As discussed above, plaintiffs alleged the Board's actual knowledge in the alternative to its allegation that Staton did not convey the information to the Board. This is acceptable at the pleading stage.

Even so, the Board argues that "the incident that was allegedly reported . . . is described [in the operative complaint] as the 'first incident,' . . . and [p]laintiffs allege no other information regarding what this 'first incident' entailed." <u>Id</u>. at 18. Therefore, plaintiffs argue that, even if Staton provided actual knowledge to the Board, plaintiffs allegations are insufficient.

14

The court can glean from the allegations what plaintiffs
mean by "first incident." Specifically, plaintiffs allege as
follows:

> 24. Beginning in October of 2021, A.C.
> endured a series of sexual assaults,
> fondling, and sexual harassment by a fellow
> student (the "Assailant").
>
> 25. In October of 2021, A.C. promptly
> reported the first incident to Staton, a
> teacher at [the elementary school].
>
> 26. Upon information and belief, Staton did
> not report A.C.'s incident to Plaintiff
> Parents, [school] administration, CCB, or
> law enforcement. In the alternative, Staton
> did report the incident to [school]
> administration, CCB and/or law enforcement,
> yet the school took no action to help A.C.
> and stop the harassment.
>
> 27. After the initial incident, the
> assailant continued to harass and assault
> A.C.

ECF No. 9 at 4. A reasonable inference to draw from these
allegations is that the first incident refers to the first of
the "series of sexual assaults, fondling, and sexual harassment"
that allegedly occurred in October 2021. These allegations
establish that the Board had actual knowledge of the alleged
harassment before implementing the safety plan in November,
after the harassment allegedly continued unabated.

As to the Board's second argument, that its response to the
alleged harassment was reasonable and not deliberately
indifferent, the Board contends that it responded within weeks,

if not days, of learning of the harassment.  See ECF No. 14 at

18.  The Board notes that in successful Title IX cases, "[m]ost

often, those cases involved allegations of complete inaction in

the face of known harassment[.]"  Id. at 19 (quoting Facchetti

v. Bridgewater Coll., 175 F. Supp. 3d 627, 638-39 (W.D. Va.

2016)).  However, that is what plaintiffs allege:  that the

Board knew of the harassment in October 2021 and took no action

until November 2021 when continued harassment allegedly caused

A.C. to break down and become inconsolable.  Whether the Board's

response was deliberately indifferent is a factual issue that

cannot be resolved at the pleading stage.

Plaintiffs assert claims under Article I, §§ 15 and 19 and

The Board's motion to dismiss is **DENIED** as to plaintiffs'

Title IX claims.

### 3.  State Constitutional Claims

Plaintiffs assert claims under Article I, §§ 15 and 19 and

Article IX, § I of the North Carolina Constitution.  See ECF No.

9 at 8.

Article I, § 15 provides that "[t]he people have a right to

the privilege of education, and it is the duty of the State to

guard and maintain that right."  N.C. Const. art. I, § 15.

Article I, § 19 provides in relevant part that "[n]o person

shall be . . . in any manner deprived of his life, liberty, or

property, but by the law of the land."  N.C. Const. art. I, §

19.  Article IX, § 1 provides that "[r]eligion, morality, and

16

knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged."  N.C. Const. art. IX, § 1.

North Carolina provides a private cause of action against state actors for violations of the state constitution when there is no adequate state law remedy to enforce the right.  See Corum v. Univ. of N.C., 413 S.E.2d 276, 289 (N.C. 1992).  These are referred to as a "Corum claims."  Washington v. Cline, 898 S.E.2d 667, 668-69 (N.C. 2024).

Although the Board does not raise this issue, the court notes that plaintiffs bring their Corum claims under § 1 of Article IX when they should have brought the claim under § 2 of that Article:  For cases of deliberate indifference to student-on-student harassment, the North Carolina Supreme Court has recognized a cause of action under Article I, § 15 and Article IX, § 2.  See Deminski on Behalf of C.E.D. v. State Bd. of Educ., 858 S.E.2d 788, 793 (N.C. 2021).  "Article IX, Section 2 implements the right to education as provided in Article I."  Id.

The correct provision, Article IX, § 2, provides that "[t]he General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools . . . wherein equal opportunities shall be provided for all students." N.C. Const. art. IX, § 2.  That provision and Article I, § 15

17

"work in tandem" because "Article I, Section 15 and Article IX,
Section 2 of the North Carolina Constitution combine to
guarantee every child of this state an opportunity to receive a
sound basic education in our public schools." Deminski, 858
S.E.2d at 793 (quoting Leandro v. State, 488 S.E.2d 249, 254
(N.C. 1997)). Therefore, "[t]aken together, Article I, Section
15 and Article IX, Section 2 require the government to provide
an opportunity to learn that is free from continual intimidation
and harassment which prevent a student from learning." Id.

Although plaintiffs bring the claim under the wrong
constitutional provision, the court will construe the Corum
claims as ones brought under Article I, § 15 and Article IX, §
2 of the North Carolina Constitution, as the basis for the claim
is clear on the face of the complaint. See West v. Mayorkas,
No. JKB-23-01661, 2024 WL 3878375, at *4 n.3 (D. Md. Aug. 20,
2024) (citing Nester v. Hampton Inn Princeton, Civ. No. 1:13-
03336, 2013 WL 5425123, at *4 (S.D.W. Va. Sept. 26, 2013)).

The Board argues for dismissal of the claims for two
reasons:  (1) "The allegations do not establish a colorable
Corum claim[]" and (2) "[a]n adequate state remedy exists."  ECF
No. 14 at 20-21.

### (a).  Sufficiency of Allegations

The Board argues that plaintiffs fail to state valid Corum
claims because this case is distinguishable from Deminski, 858

18

S.E.2d at 788, the case that recognized a claim under the state constitution for student-on-student harassment.

In Deminski, the mother of three minor children alleged that over a period of several months, students bullied her children and made crude sexual remarks and gestures toward them. See id. at 790-91. The school board knew of the incidents but allowed the harassment to persist. See id. at 791. The Supreme Court of North Carolina held that the mother alleged a colorable claim under the North Carolina Constitution because she "alleged that defendant prevented plaintiff-students from accessing their constitutional right to a sound basic education as a result of defendant's deliberate indifference to ongoing harassment in the classroom." Id. at 795.

The Board argues that this case is different because "there is no allegation that: (a) any school administrator had any knowledge of the incidents; or (b) that a report was made and ignored." See ECF No. 14 at 20. However, as discussed above, plaintiffs allege that the Board had actual knowledge and that the Board failed to intervene before A.C. allegedly endured more abuse. These allegations are sufficient to state a claim under Deminski. Whether the allegations are true and "prevented [A.C] from accessing [his] constitutional right to a sound basic education" are factual determinations that cannot be resolved at this stage.

In establishing the Corum cause of action, the North
Carolina Supreme Court explained, "in the absence of an adequate
state remedy, one whose state constitutional rights have been
abridged has a direct claim against the State under our
Constitution." 413 S.E.2d at 289. "[A]n adequate remedy is one
that meaningfully addresses the constitutional violation, even
if the plaintiff might prefer a different form of relief."
Askew v. City of Kinston, 902 S.E.2d 722, 728 (N.C. 2024)
(quoting Washington v. Cline, 898 S.E.2d 667, 671 (N.C. 2024)).
This is meant to "ensure that every right does indeed have a
remedy in our court system." Id. (quoting Washington, 898
S.E.2d at 668–69). Thus, "Corum offers a common law cause of
action when existing relief does not sufficiently redress 'a
violation of a particular constitutional right[.]'" Id.
(quoting Corum, 413 S.E.2d at 276).

In this case, the Board argues that an adequate state law
remedy existed under North Carolina General Statute § 115C-
407.15, which, among other things, prohibits "bullying or
harassing behavior" at schools. North Carolina school boards
are required to adopt a policy prohibiting such behavior. See
id. § 115C-407.16. This policy must include provisions defining
the consequences for a person who commits an act of bullying or
harassment, and provisions creating procedures for reporting

bullying or harassment and for investigating those reports.  See
id. at (b)(5)-(6).

The Board adopted a policy that requires prompt
investigation of bullying or harassment when a student files a
written complaint.  See Cabarrus County Schools Policy Code
1720/4015/7225, Discrimination, Harassment and Bullying
Complaint Procedure at D.1.  The investigator must make findings
as to whether the student's complaint is substantiated and, if
so, identify ways to redress the issue.  See id. at D.3.  If a
complainant is not satisfied with the results of the
investigation, the complainant may appeal to the Board.  See id.
at D.4.

Under the general "judicial" functions of school boards, an
appeal shall lie to the local school board from any "final
administrative decision" regarding "[a]n alleged violation of a
specified federal law, State law, State Board of Education
policy, State rule, or local board policy . . . ."  N.C. Gen.
Stat. § 115C-45(c)(2).  The statute defines a "final
administrative decision" as "a decision of a school employee
from which no further appeal to a school administrator is
available."  See id. at (c).  Under narrow circumstances, a
decision of the school board may be further appealed to the
North Carolina Superior Court.  See id.

21

The Board argues that these provisions provided plaintiffs an adequate state law remedy because they gave plaintiff access to the courts. See ECF No. 14 at 23. The North Carolina Supreme Court has held otherwise. In Deminski, the North Carolina School Boards Association, acting as an amicus curiae, made this argument. See Br. of N.C. Sch. Bd. Ass'n as Amicus Curiae, at *5-6, Deminski, 2020 WL 6049465. Even so, the court held that because the plaintiff sought monetary damages and injunctive relief, "[t]he remedy sought here cannot be redressed through other means, as an adequate 'state law remedy [does] not apply to the facts alleged' by plaintiff." Deminski 858 S.E.2d at 794 (quoting Craig v. New Hanover Cty. Bd. of Educ., 678 S.E.2d 351, 356 (N.C. 2009)). The same is true here.

The question under Corum is whether state law permits a remedy for "constitutional injuries." Gonzalez v. Bennett, No. 5:24-CT-3139-FL, 2025 WL 818556, at *9 (E.D.N.C. Mar. 13, 2025) (quoting Craig, 678 S.E.2d at 356). In this case, the alleged constitutional injury is the Board's deliberate indifference to ongoing harassment in the classroom. The Board's policy for addressing claims of harassment does not provide a remedy against the Board for this alleged constitutional injury. It also does not follow that plaintiffs would be required to appeal claims against the Board to the Board before having access to the courts.

22

The Board's motion is **DENIED** as to plaintiffs' claims brought under the North Carolina Constitution.

## IV. Conclusion

For the above reasons, the Board's motion to dismiss (ECF No. 11) is **GRANTED** as to plaintiffs' state law tort claims, and **DENIED** as to the rest of plaintiffs' claims. Plaintiffs' motion to amend the operative complaint to correct Staton's first name (ECF No. 32) is **GRANTED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 7th day of May, 2025.

ENTER:

David A. Faber
Senior United States District Judge

23